1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MIGUEL WHITE,                              No. 2:14-cv-0845 TLN AC (TEMP)

12            Petitioner,

13       v.

14  F. FOULK, Warden,                          FINDINGS AND RECOMMENDATIONS

15            Respondent.

16

17        Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18  habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19  entered against him on September 9, 2011, in the Sacramento County Superior Court on three

20  counts of second degree robbery with use of a firearm and one count of attempted carjacking,

21  with jury findings that he personally used a firearm and intentionally discharged a firearm causing

22  great bodily injury.  Petitioner seeks federal habeas relief on the following grounds: (1) jury

23  instruction error violated his right to due process; (2) the evidence is insufficient to support the

24  jury finding that he intentionally discharged a firearm; and (3) his trial counsel rendered

25  ineffective assistance in failing to request a "pinpoint" jury instruction.  Upon careful

26  consideration of the record and the applicable law, the undersigned recommends that petitioner's

27  application for habeas corpus relief be denied.

28  /////

1

1  **I.      Background**

2          In its unpublished memorandum and opinion affirming petitioner's judgment of

3  conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

4  following factual summary:

5  6  7  8  9  10
> Defendant Miguel White and an accomplice robbed three pizza delivery men at gunpoint.  During the third robbery, defendant shot the delivery man in the leg.  Following a jury trial, he was convicted of three counts of second degree robbery (Pen.Code, § 211)1 and one count of attempted carjacking (§§ 664/215, subd. (a)).    Additionally, the jury found true three enhancements for personal use of a firearm (§ 12022.53, subd. (b)) and an enhancement for personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subds.(c), (d)).  The trial court sentenced defendant to state prison for 18 years four months plus 25 years to life.

11  12  13
> On appeal, defendant contends (1) there is insufficient evidence to support the personal and intentional discharge of a firearm enhancement, (2) instructional error on that enhancement, and (3) trial counsel was ineffective for failing to request an instruction on accident. We affirm.

14
> **FACTUAL AND PROCEDURAL BACKGROUND**

15  16  17
> In January 2009, defendant lived in an apartment with Willie Soders, Latisha Watkins, and Sarina Lockhart.  Defendant and Watkins were in a relationship, as were Soders and Lockhart. Soders's hair was styled in dreadlocks or "twisties" at the time, while defendant had a short haircut.

18
> **Pizza Guys Delivery Robbery**

19  20  21
> On January 20, 2009, defendant had Lockhart call in an order with Pizza Guys for delivery to an address other than their apartment. Defendant and Soders donned hooded sweatshirts and left the apartment 20 to 30 minutes later.  They returned to the apartment with pizza and $90 cash.

22  23  24
> Oleksander Melynk delivered the pizza order.    Two men approached Melynk, one of whom was armed.  The armed man pointed a shotgun at Melynk and said, "give me the money." Melynk handed over $100 cash, and the robbers fled with the pizza and the money.

25
> **Round Table Pizza Delivery Robbery**

26  27
> On January 22, 2009, Lockhart, at defendant's request, called in a delivery order to Round Table Pizza.  Defendant and Soders donned hooded sweatshirts after the order was placed.

28  /////

2

Joaquin Perez delivered the order to the address given by Lockhart, but the family residing there told him they had not ordered any food.  Perez called the phone number on the receipt, and a male voice confirmed the order.  There was laughing in the background, so Perez tried to verify the address, but the man hung up.  Perez then called his supervisor, who called the number to verify the address.  After getting the same treatment as Perez, the supervisor told Perez to return to the restaurant with the pizza order.

Later, Perez received a call from a male at the same number asking for the pizza.  The caller, defendant, said he would have someone outside waiting for the order to arrive.   Perez's supervisor authorized a delivery, and Perez drove to the address given in the call.   As Perez drove up, he saw a "like a younger kid" with "dreaded" or "twisted" hair standing by the curb opposite from the delivery address.    After Perez unloaded the food, he was approached by a different man; this man was carrying a shotgun.  The gunman demanded money and Perez gave him $20 in one dollar bills.  The gunman then demanded Perez's cell phone and Perez reluctantly gave it to him.  Perez asked why they were doing this since they would only get a small amount.  He then asked for his cell phone back and the gunman asked Perez if he wanted the phone back because he was planning on calling the police.  Perez said, "no[,] never mind" and was then "sucker-punched" in the face by the unarmed man with the dreadlocks or twisties.  The gunman asked for Perez's Bluetooth earpiece, but Perez said it fell out of his ear when he was hit.  He explained it was somewhere on the ground.  The robbers fled without taking the food.

Defendant and Soders returned to the apartment with $20 and no food.  Lockhart asked Soders where the pizza was; Soders replied it was none of her business.  Lockhart later saw Soders reenact hitting a person.

**Domino's Delivery**

On January 23, 2009, Lockhart refused defendant's request to call in a pizza order to Domino's, as she now suspected it was a pretense to robbery.  Soders choked Lockhart, and someone else placed the order.   Defendant and Soders dressed in hooded sweatshirts and left the apartment.

John Martinez delivered the pizza order.  The house was "kind of dark" when Martinez arrived.  He backed the car into the driveway and started unloading the pizzas.  When he turned around, two men were standing in front of him.  One of the men, defendant, held a shotgun.

Defendant told Martinez to "give me everything."  Martinez put down the pizza, took out his wallet, and pulled out $20.   The unarmed man then searched Martinez's pockets and, after finding another $20, held it up for defendant to see.  Defendant then asked Martinez for his keys and cell phone; Martinez gestured toward his car by moving his head.

3

Martinez decided to leave after it became quiet for a moment. Martinez took a step backward toward his car door, and defendant leaned forward and shot Martinez in the leg. Martinez turned around, saw a "huge hole" in his leg, and the two robbers slowly jogging from the scene. The robbers left the pizza. Martinez thought he had been shot to keep him from pursuing the robbers.

Defendant and Soders were out of breath and looked worried when they returned to the apartment. Lockhart asked if something was wrong, and defendant said, "[s]omeone got hurt."

Sometime thereafter, defendant and Watkins got into an argument and defendant moved out of the apartment. According to Lockhart, defendant took a shotgun wrapped in a shirt with him when he left.

**Investigation, Arrest and Defendant's Admissions**

Police determined the phone number used to order the pizza on all three occasions belonged to Soders. Soders, who was on probation, was arrested with the cell phone in his possession. It had been used to call each pizzeria on the night their delivery man was robbed. The phone contained a photograph of defendant holding a shotgun.

When he was arrested, defendant tried to evade the police by exiting a fourth floor apartment balcony and climbing along a three-inch ledge to the balcony of an adjacent apartment, where he was found. In an interview with the police, defendant admitted that he was the person holding the shotgun in the photograph on Soders's phone.

Defendant initially claimed he knew about only one of the robberies. Later, he admitted participating in the second robbery, and explained that the first robbery was "easy." He also admitted participating in the third robbery.

Defendant knew Martinez, the victim of the third robbery, was lying when he said that he had only $20. When Soders demanded the car, Martinez refused and took a step toward them. Defendant and Soders told Martinez to stop. When Martinez "tried to pull a move," defendant jumped back, and the shotgun accidentally discharged. Defendant said, "we didn't know that the gun was loaded." Defendant did not provide this accidental discharge scenario until after the detective who was interrogating defendant suggested the shooting was accidental as an interrogation technique.

People v. White, No. C069249, 2013 WL 1277880, at *1-2 (Cal. Ct. App. Mar. 29, 2013).

After the California Court of Appeal affirmed his judgment of conviction, petitioner filed a petition for review in the California Supreme Court, claiming that "review should be granted as to whether it is error to instruct that intentional discharge of a firearm is a general intent gun use allegation when the defense theory of the case is accident." (Resp't's Lod. Doc. 11.) The petition

4

1   for review was summarily denied.  (Resp't's Lod. Doc. 12.)

2       **II.       Standards of Review Applicable to Habeas Corpus Claims**

3           An application for a writ of habeas corpus by a person in custody under a judgment of a

4   state court can be granted only for violations of the Constitution or laws of the United States.  28

5   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

6   application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

7   U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

8           Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

9   corpus relief:

10                  An application for a writ of habeas corpus on behalf of a person in
                    custody pursuant to the judgment of a State court shall not be
11                  granted with respect to any claim that was adjudicated on the merits
                    in State court proceedings unless the adjudication of the claim -
12
13                  (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
14                  determined by the Supreme Court of the United States; or

15                  (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the
16                  State court proceeding.

17          For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

18   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

19   Greene v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852,

20   859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court

21   precedent "may be persuasive in determining what law is clearly established and whether a state

22   court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606

23   F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen

24   a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme]

25   Court has not announced."  Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013)

26   (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be

27   used to "determine whether a particular rule of law is so widely accepted among the Federal

28   Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further,

5

1   where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is

2   "clearly established Federal law" governing that issue.  <u>Carey v. Musladin</u>, 549 U.S. 70, 77

3   (2006).

4          A state court decision is "contrary to" clearly established federal law if it applies a rule

5   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

6   precedent on "materially indistinguishable" facts.  <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003).

7   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

8   writ if the state court identifies the correct governing legal principle from the Supreme Court's

9   decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Lockyer v.

10  Andrade</u>, 538 U.S. 63, 75 (2003); <u>Williams</u>, 529 U.S. at 413; <u>Chia v. Cambra</u>, 360 F.3d 997, 1002

11  (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

12  concludes in its independent judgment that the relevant state-court decision applied clearly

13  established federal law erroneously or incorrectly.  Rather, that application must also be

14  unreasonable."  <u>Williams</u>, 529 U.S. at 412.  <u>See also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473

15  (2007); <u>Lockyer</u>, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

16  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

17  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

18  'fairminded jurists could disagree' on the correctness of the state court's decision."  <u>Harrington v.

19  Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

20  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

21  must show that the state court's ruling on the claim being presented in federal court was so

22  lacking in justification that there was an error well understood and comprehended in existing law

23  beyond any possibility for fairminded disagreement."  <u>Richter</u>, 562 U.S. at 103.

24         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

25  court must conduct a de novo review of a habeas petitioner's claims.  <u>Delgadillo v. Woodford</u>,

26  527 F.3d 919, 925 (9th Cir. 2008); <u>see also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008)

27  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

28  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

6

1   de novo the constitutional issues raised.").

2          The court looks to the last reasoned state court decision as the basis for the state court

3   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

4   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

5   previous state court decision, this court may consider both decisions to ascertain the reasoning of

6   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

7   federal claim has been presented to a state court and the state court has denied relief, it may be

8   presumed that the state court adjudicated the claim on the merits in the absence of any indication

9   or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

10  may be overcome by a showing "there is reason to think some other explanation for the state

11  court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

12  (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but

13  does not expressly address a federal claim, a federal habeas court must presume, subject to

14  rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

15  ___, 133 S. Ct. 1088, 1091 (2013).

16         Where the state court reaches a decision on the merits but provides no reasoning to

17  support its conclusion, a federal habeas court independently reviews the record to determine

18  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

19  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

20  review of the constitutional issue, but rather, the only method by which we can determine whether

21  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

22  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

23  reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

24         A summary denial is presumed to be a denial on the merits of the petitioner's claims.

25  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

26  just what the state court did when it issued a summary denial, the federal court must review the

27  state court record to determine whether there was any "reasonable basis for the state court to deny

28  relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

7

1   have supported, the state court's decision; and then it must ask whether it is possible fairminded

2   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

3   decision of [the Supreme] Court." 562 U.S. at 102.  The petitioner bears "the burden to

4   demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.

5   Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

6          When it is clear, however, that a state court has not reached the merits of a petitioner's

7   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

8   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

9   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

10      **III.    Petitioner's Claims**

11          **A. Jury Instruction Error**

12          In his first asserted ground for relief, petitioner claims that the trial court violated his right

13   to due process by instructing the jury that intentional discharge of a firearm is a general intent gun

14   use allegation when the defense theory of the case is accident.  (ECF No. 5 at 4; Resp't's Lod.

15   Doc. 11 at 4-10.)  He argues the jurors should have been instructed, instead, that they were

16   required to find he specifically intended to discharge the firearm.  (Resp't's Lod. Doc. 11 at 10.)

17          **1. State Court Decision**

18      The California Court of Appeal denied this claim, reasoning as follows:

19              Defendant contends the trial court committed prejudicial error by
20              instructing the jury that the intentional discharge of a firearm
                enhancement (§ 12022.53, subd. (d)) is a general intent allegation.
21              He is mistaken.

22              During deliberations, the jury asked the trial court: "Definition of
                the legal term intent per the first special finding in Count Five . . . .
23              As written in PC 12022.53(b), page 39, and section 12022.53(d),
                page 40, and violation of section 664 dash 184 subsection A, page
24              38."   The question refers to the firearm allegations and the
                attempted murder charge in count five.

25              The trial court told the jury that attempted murder was a specific
                intent crime that required an intent to kill and that the personal use
26              enhancement was a general intent allegation that required an intent
                to do one of the proscribed acts.   Regarding the intentional
27              discharge allegation, the trial court stated: "this is a general intent
                allegation . . . . [¶] . . . [¶] . . .  For you to find this allegation true,
28              that person must not only commit the prohibited act, but must do so

with wrongful intent, to wit, that: 'the defendant intended to discharge the firearm.'  A person acts with wrongful intent when he or she intentionally does a prohibited act, however, it is not required that he or she intend to break the law. [¶]  For each crime and allegation, each of the elements for that crime and allegation must be proven beyond a reasonable doubt by the Prosecution."  Defendant objected to the use of general intent in defining the intentional discharge allegation, asserting that the enhancement requires a "specific intent" to discharge the firearm.

Defendant contends on appeal the court's answer regarding general intent was incorrect and confused the jury.   Noting that the distinction between general and specific intent can be confusing (see People v. Hood (1969) 1 Cal.3d 444, 456 ["Specific and general intent have been notoriously difficult terms to define and apply"]), defendant asserts that the trial court's response "merely begs the jury's question" as to whether defendant specifically intended to fire the shotgun as opposed to doing so by accident or negligence.

We must review jury instructions based on how a reasonable juror would construe them.  (People v. Clair (1992) 2 Cal.4th 629, 688.)  The ultimate test on appeal is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution. [Citation.]"  (Estelle v. McGuire (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385].)  We do not review fragments of instructions divorced from the entire instruction; nor can we review an instruction isolated from the complete charge to the jury.  (People v. Thomas (2007) 156 Cal.App.4th 304, 310.)

Here, the trial court's instruction was proper.  People v. Wardell (2008) 162 Cal.App.4th 1484, a case not cited by either party, is relevant to this issue.   In Wardell, the court held the enhancement in section 12022.5, subdivision (a) for personal use of a firearm requires a general intent, not a specific intent.  The court noted, "'"When the definition of a crime [or enhancement] consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act.   This intention is deemed to be a general criminal intent.   When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime [or enhancement] is deemed to be one of specific intent.'"   [Citation.] [¶]   The definition of personal use of a firearm consists of a description only of the proscribed act- 'personal[ ] use[ ][of] a firearm in the commission of a felony or attempted felony.'   (Pen.Code, § 12022.5, subd. (a).)   No intent to 'do some further act or achieve some additional consequence' is part of the statutory definition."   (Wardell, supra, 162 Cal.App.4th at p. 1494.)[1]   And as our high

---

[1]  This explanation of general and specific intent criminal provisions is found in cases the parties do discuss.  (People v. Davis (1995) 10 Cal.4th 463, 518–519, fn. 15; People v. Verlinde (2002) 100 Cal.App.4th 1146, 1166–1167 [great bodily injury enhancement required general intent, not

court has recognized, when the Legislature intends to require proof of a specific intent in an enhancement provision, it has done so explicitly by referring to the required specific intent in the statute. (In re Tameka C. (2000) 22 Cal.4th 190, 199; see, e.g., former § 12022.7, subd. (a), as amended by Stats.1994, ch. 873, § 3 [former great bodily injury enhancement in § 12022.7 which read, "[a]ny person who, with the intent to inflict the injury, personally inflicts great bodily injury," required a specific intent to cause great bodily injury].)

Here, the enhancement in section 12022.53, subdivision (d) consists of a description only of the proscribed act – personal and intentional discharge of the firearm, i.e., the defendant intended to pull the trigger.  It does not require that a defendant intend to pull the trigger with the intent to do some further act or accomplish some other goal.[2]  Thus, the enhancement calls for general criminal intent.

Defendant insists the trial court should have told the jury the enhancement requires that a defendant specifically intend to discharge the firearm.  He relies on People v. Villanueva (2008) 169 Cal.App.4th 41, in which the trial court told the jury as much. (Id. at p. 54.)  The appellate court in Villanueva did not sanction the trial court's language; nor do we.  Adding the word "specifically" to the instruction does not change what intent must be proven, i.e., that defendant intended to pull the trigger.

The instructions taken as a whole properly defined the mental element of the intentional discharge enhancement.  The court's reply defined the mens rea element for the enhancement as "the defendant intended to discharge the firearm."  This was the definition already given to the jury through the standard instruction on the enhancement, CALCRIM No. 3148.  The court's reply also referred the jury to CALCRIM No. 252 (union of act and intent) and CALCRIM No. 3146.  Taken together, the court's response to the jury question instructed the jury to apply the correct mens rea element required for the enhancement allegation and helped the jury determine the issue central to the enhancement – whether defendant intended to pull the trigger.

White, 2013 WL 1277880, at *4-5.

_____

specific intent].)  This well-settled rule has its origin in People v. Hood (1969) 1 Cal.3d 444, 456–457.

[2]  We reject the argument in defendant's reply brief that the enhancement does require a further consequence – causing great bodily injury – and thus, requires a specific intent.  Defendant seemingly overlooks the rule that specific intent provisions require the commission of the act with the intent to do a further act or achieve a future consequence.  For example, if the statutory language in question here provided for an enhancement when the defendant personally and intentionally discharges a firearm with the intent to cause great bodily injury or death, then the enhancement would require specific intent.

1

### 2. Applicable Legal Standards

2      In general, a challenge to jury instructions does not state a federal constitutional claim.

3   Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.

4   1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely

5   'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

6   right guaranteed by the fourteenth amendment."  Cupp v. Naughten, 414 U.S. 141, 146 (1973).

7   The appropriate inquiry "is whether the ailing instruction . . . so infected the entire trial that the

8   resulting conviction violates due process."  Middleton v. McNeil, 541 U.S. 433, 437 (2004)

9   (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).

10      "[A] single instruction to a jury may not be judged in artificial isolation, but must be

11   viewed in the context of the overall charge."  Id.  (quoting Boyde v. California, 494 U.S. 370, 378

12   (1990)) (internal quotation marks omitted).  "Instructions that contain errors of state law may not

13   form the basis for federal habeas relief."  Gilmore v. Taylor, 508 U.S. 333, 342 (1993).  "If the

14   charge as a whole is ambiguous, the question is whether there is a 'reasonable likelihood that the

15   jury has applied the challenged instruction in a way' that violates the Constitution."  Dixon v.

16   Williams, 750 F.3d 1027, 1033 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc

17   (June 11, 2014) (citations omitted).

18      Petitioner is entitled to relief on this jury instruction claim only if he can show prejudice.

19   Dixon, 750 F.3d at 1034.  Prejudice is shown for purposes of habeas relief if the trial error had a

20   "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

21   Abrahamson, 507 U.S. 619, 637 (1993).  A reviewing court may grant habeas relief only if it is

22   "'in grave doubt as to the harmlessness of an error.'"  Id. (quoting O'Neal v. McAninch, 513 U.S.

23   432, 437 (1995)).

24

### 3. Analysis

25      The California Court of Appeal concluded that the trial court did not violate state law in

26   instructing the jury that the intentional discharge of a firearm enhancement, as set forth in Cal.

27   Penal Code § 12022.53 (d), is a general intent allegation.  That conclusion is binding on this

28   court.  Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005.)  As set forth above, petitioner is not

1    entitled to federal habeas relief on a claim alleging a violation of state law.  In order to prevail on

2    his federal due process claim, petitioner must demonstrate that the trial court's instruction "so

3    infected the entire trial that the resulting conviction violates due process."  Estelle, 502 U.S. at 72.

4    Petitioner has failed to make the required showing.

5          Under the circumstances of this case, instructing the jury that the intentional discharge of

6    a firearm enhancement is a general intent allegation, and not a specific intent allegation, did not

7    render the proceedings fundamentally unfair.  The jury instructions as a whole correctly defined

8    under California law the mental state requirement for a true finding on the intentional discharge

9    enhancement.  Petitioner's trial was not rendered unfair through the use of jury instructions that

10   correctly described the elements of the firearm enhancement.

11         In any event, as set forth below in this court's analysis of petitioner's claim of insufficient

12   evidence, the evidence introduced at petitioner's trial strongly supports the jury's finding that he

13   intended to fire the weapon at Martinez.  The jury verdict reflects that the jurors rejected

14   petitioner's claim to have shot the firearm by accident.  Under these circumstances, the trial

15   court's failure to inform the jury that it must find petitioner specifically intended to fire the

16   shotgun, as opposed to firing it by accident or negligence, could not have had a "substantial and

17   injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.

18         Petitioner has failed to show that the state court adjudication of the merits of his jury

19   instruction claim resulted in a decision that was contrary to, or involved an unreasonable

20   application of federal law.  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

21   Certainly, the decision of the California Court of Appeal is not "so lacking in justification that

22   there was an error well understood and comprehended in existing law beyond any possibility for

23   fairminded disagreement."  Richter, 562 U.S. at 103.  Accordingly, petitioner is not entitled to

24   habeas relief on this jury instruction claim.

25         **B.  Sufficiency of the Evidence**

26         In his next asserted ground for relief, petitioner claims that the evidence introduced at his

27   trial was insufficient to support the jury finding that he intentionally discharged the firearm when

28   he shot Martinez.  (ECF No. 5 at 4.)  Respondent argues that this claim is unexhausted because it

1   was not presented to the California Supreme Court.  (ECF No. 13 at 21.)

2          Generally, a state prisoner must exhaust all available state court remedies, either on direct

3   appeal or through collateral proceedings, before a federal court may consider granting habeas

4   corpus relief.  28 U.S.C. § 2254(b)(1).  However, a federal court considering a habeas petition

5   may deny an unexhausted claim on the merits, notwithstanding the failure of the applicant to

6   exhaust the remedies available in the courts of the State.  28 U.S.C. § 2254(b)(2).  Assuming

7   arguendo that petitioner's claim of insufficient evidence was not exhausted in state court, this

8   court recommends that it be denied on the merits.

9                    **1. State Court Decision**

10         The California Court of Appeal denied petitioner's claim that the evidence was

11  insufficient to support the jury finding that he intentionally discharged the firearm when he shot

12  Martinez.  The court reasoned as follows:

> Defendant contends there is insufficient evidence to support the true finding for intentional and personal discharge of a firearm resulting in great bodily injury (§ 12022.53, subd. (d)) in count three, the robbery of John Martinez.  We disagree.
>
> Section 12022.53, subdivision (d), states in pertinent part: ". . . any person who, in the commission of a felony specified in subdivision (a), . . . personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7 . . . to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."  Robbery is one of the felonies enumerated in subdivision (a) of section 12022.53. (§ 12022.53, subd. (a)(4).)
>
> The test for sufficiency of the evidence to support an enhancement is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the elements of the enhancement beyond a reasonable doubt.  (People v. Alvarez (1996) 14 Cal.4th 155, 225.)  Defendant argues there is insufficient evidence that he intentionally discharged the shotgun. He claims the evidence shows he shot Martinez accidentally rather than intentionally.  Noting the jury could not reach a verdict in an attempted murder count stemming from the assault,[3] defendant asks us to reverse the true finding.
>
> The cases cited by defendant do not support his contention.  He

_____

[3]  The jury deadlocked at 10 to two on the attempted murder charge in count five and the trial court declared a mistrial as to that charge.

13

relies on a passage from <u>People v. Silbertson</u> (1985) 41 Cal.3d 296. But the passage he cites is part of a discussion finding failure to instruct on intent to kill (an element of the felony murder special circumstance at the time) in which the court determined the failure was not harmless in light of evidence negating defendant's intent to kill.  (<u>Id.</u> at pp. 304, 306–307 & fn. 13.)  <u>Silbertson</u> is irrelevant to defendant's contention.

This court's decision in <u>People v. Treadway</u> (2010) 182 Cal.App.4th 562 is likewise inapposite. <u>Treadway</u> involved a mentally disabled defendant who shot the victim purportedly after the victim threw his lunch bag at the defendant and charged him in an attempt to obtain the defendant's gun. (<u>Id.</u> at p. 565.) The issue this court decided in <u>Treadway</u> was whether the prosecution's plea agreement barring the codefendants from testifying at defendant's trial violated defendant's right to compulsory process and due process. (<u>Id.</u> at p. 567.)

In <u>People v. Jones</u> (1991) 234 Cal.App.3d 1303, the Court of Appeal held the trial court's failure to give a sua sponte instruction on the defense of accident was harmless error.  (<u>Id.</u> at p. 1314.) That ruling is not relevant as to whether substantial evidence supports the true finding on the enhancement here, and the holding that a trial court has a duty to instruct sua sponte on accident has since been disapproved.  (<u>People v. Anderson</u> (2011) 51 Cal.4th 989, 998, fn. 3.)

The evidence here shows that defendant and Soders responded with force if their victims showed any independence.  When the victim of the Round Table robbery questioned the wisdom of robbing him for such a small amount of money and asked defendant to return his cell phone, Soders struck him in the face.  The victim of the shooting, Martinez, initially did not give the robbers all of his money, and unsuccessfully tried to keep $20.  He was shot as he took a step backward in an effort to leave the scene before defendant and Soders made their escape.

According to Martinez's testimony, defendant held the shotgun at shoulder level and pointed it at Martinez throughout the robbery. Martinez was standing at the rear driver's side of his car, while defendant was "on the sidewalk, like maybe a little bit up on the driveway."  After it became silent for a moment, Martinez took a step back to get into his car.  He was then shot in the leg, "in the perfect spot, just like to cripple me."  Martinez did not see the gun when he was shot, but testified that defendant "lean[ed] forward and shot."  Martinez saw the muzzle flash.  Defendant was four or five feet from Martinez when the shotgun was discharged.

The evidence supports an inference that defendant intentionally shot Martinez in the leg to prevent him from leaving the scene. Defendant, who had been pointing the shotgun at Martinez, leaned forward as he shot Martinez, indicating the shot was aimed and therefore intentional.  Shooting Martinez in the leg accomplished the task of allowing defendant and Soders to escape the scene.  In

1  short, the true finding on the enhancement is supported by
2  substantial evidence.

3  White, 2013 WL 1277880, at *3-4.

4  ### 2. Applicable Legal Standards

5  The Due Process Clause "protects the accused against conviction except upon proof

6  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

7  charged." In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

8  conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

9  rational trier of fact could have found the essential elements of the crime beyond a reasonable

10  doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  If the evidence supports conflicting

11  inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in

12  favor of the prosecution," and the court must "defer to that resolution." Id. at 326. See also Juan

13  H. v. Allen, 408 F.3d 1262, 1274, 1275 & n. 13 (9th Cir.2005).  "[T]he dispositive question under

14  Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

15  reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

16  U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground

17  of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos

18  v. Smith, ___ U.S. ___, ___, 132 S. Ct. 2, 4 (2011).

19  In conducting federal habeas review of a claim of insufficiency of the evidence, "all

20  evidence must be considered in the light most favorable to the prosecution." Ngo v. Giurbino,

21  651 F.3d 1112, 1115 (9th Cir. 2011).  "Jackson leaves juries broad discretion in deciding what

22  inferences to draw from the evidence presented at trial," and it requires only that they draw

23  "'reasonable inferences from basic facts to ultimate facts.'" Coleman v. Johnson, ___ U.S. ___,

24  ___, 132 S. Ct. 2060, 2064 (2012) (citation omitted).  "'Circumstantial evidence and inferences

25  drawn from it may be sufficient to sustain a conviction.'" Walters v. Maass, 45 F.3d 1355, 1358

26  /////

27  /////

28  /////

15

1   (9th Cir. 1995) (citation omitted).[4]

2       "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

3   the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

4   Juan H., 408 F.3d at 1274.  In order to grant relief, the federal habeas court must find that the

5   decision of the state court rejecting an insufficiency of the evidence claim reflected an objectively

6   unreasonable application of the decisions in Jackson and Winship to the facts of the case.  Ngo,

7   651 F.3d at 1115; Juan H., 408 F.3d at 1275 & n.13.  Thus, when a federal habeas court assesses a

8   sufficiency of the evidence challenge to a state court conviction under AEDPA, "there is a double

9   dose of deference that can rarely be surmounted."  Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir.

10  2011).  See also Kyzar v. Ryan, 780 F.3d 940, 948-49 (9th Cir. 2015) (same); Long v. Johnson,

11  736 F.3d 891, 896 (9th Cir. 2013) (same).

12          **3. Analysis**

13      The state appellate court's decision that the evidence introduced at petitioner's trial was

14  sufficient to support the jury finding that he intentionally discharged the firearm when he shot

15  Martinez is not contrary to or an unreasonable application of Jackson and In re Winship to the

16  facts of this case.  Smith, 132 S. Ct. at 4.  As noted by the California Court of Appeal, the

17  evidence reflected that petitioner and Soders used force against any victim who showed

18  resistance; petitioner was pointing the shotgun at Martinez throughout the robbery; petitioner shot

19  Martinez only after Martinez took a step toward his car, as if to escape; and petitioner leaned

20  forward before he shot Martinez in the leg, as if he was aiming.  (White, 2013 WL 1277880, at

21  *3-4; see also Reporter's Transcript on Appeal (RT) at 49-50, 73-77, 79, 98, 100, 103.)  Martinez

22  thought the robbers intended to wound him so that they could get away, because they shot him "in

23  the perfect spot, like just to cripple me, I think."  (RT at 74, 100.)  Viewing this evidence in the

24  light most favorable to the verdict, a rational juror could have found beyond a reasonable doubt

25  that petitioner intended to discharge a firearm when he shot Martinez.  Accordingly, petitioner is

26

27  [4]  The federal habeas court determines sufficiency of the evidence in reference to the substantive
    elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein,
28  373 F.3d at 983.

1    not entitled to federal habeas relief on his claim of insufficient evidence.

2            **C.  Ineffective Assistance of Counsel**

3         In his third asserted ground for relief, petitioner claims that his trial counsel rendered

4    ineffective assistance by failing to request a "pinpoint" jury instruction on the defense of accident,

5    pursuant to CALCRIM No. 3404.  (ECF No. 5 at 5.)  As in the claim above, respondent argues

6    that this claim is unexhausted because it was not presented to the California Supreme Court.

7    (ECF No. 13 at 26.)  Assuming arguendo that petitioner's claim of ineffective assistance of

8    counsel was not exhausted in state court, this court will recommend that it be denied on the

9    merits, pursuant to 28 U.S.C. § 2254(b)(2).

10           **1.  State Court Decision**

11         The California Court of Appeal denied petitioner's claim of ineffective assistance of

12    counsel, reasoning as follows:

13
14              Defendant contends trial counsel was ineffective in failing to request a pinpoint instruction on the defense of accident with regard to the intentional discharge enhancement.

15
16
17
18
19
20              To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant.  (Strickland v. Washington (1984) 466 U.S. 668, 688, 691–692 [80 L.Ed.2d 674] (Strickland); People v. Ledesma (1987) 43 Cal.3d 171, 216–217 (Ledesma).)  "'Surmounting Strickland's high bar is never an easy task.'"  (Harrington v. Richter (2011) ___ U.S. ____, ____ [178 L.Ed.2d 624, 642 (Richter), quoting Padilla v. Kentucky (2010) 559 U.S. ___, ____ [176 L.Ed.2d 284, 297.)

21
22
23
24
25              To establish prejudice, "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"  (Richter, supra,___ U.S. at p.____ [178 L.Ed.2d at p. 642].)  To show prejudice, defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient.  (Strickland, supra, 466 U.S. at pp. 693–694; Ledesma, supra, 43 Cal.3d 171, 217–218.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (Strickland, supra, 466 U.S. at p. 694; accord, Ledesma, supra, 43 Cal.3d at p. 218.)

26
27
28              Even assuming trial counsel should have requested the accident instruction, defendant has failed to show how he was prejudiced by counsel's failure to do so.  The jury was instructed with CALCRIM No. 3148 that the People must prove beyond a reasonable doubt that defendant intentionally fired the shotgun.  The accident

instruction offered no additional guidance on the issue that would have been helpful here.[5]  The defense was able to, and did argue that the shotgun was fired accidentally rather than intentionally. The jury's true finding as to the section 12022.53, subdivision (d) firearm allegation necessarily means that the jury found the firearm was not accidentally discharged.  The evidence on this issue was compelling.

The evidence suggesting that defendant accidentally fired the shotgun, on the other hand, was suspect.  His statement to the detective that the gun discharged accidentally was made only after the detective suggested as much as an interrogation tactic. Defendant denied wielding the shotgun during the second robbery, yet the victim said the unarmed person had dreadlocks or twisties. That described Soders's hairstyle, not defendant's.  Defendant claimed that neither he nor Soders knew the shotgun was loaded when it discharged and wounded Martinez.  Yet, the evidence suggested defendant was familiar with shotguns.  He had posed for a picture holding one and it was defendant who later took a shotgun from the apartment when he moved.

Defendant has failed to show a reasonable probability that he would have received a more favorable result had the accident instruction been given.

White, 2013 WL 1277880, at *5-7.

## 2. Applicable Legal Standards

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense."  Id. at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases."  Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Richter, 562 at

---

[5]  CALCRIM No. 3404 reads in pertinent part as follows: "[The defendant is not guilty of _____ <insert crime[s] > if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of _____ <insert crime[s] > unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent.]"  Even if modified for the section 12022.53, subdivision (d) firearm enhancement, the instruction would tell the jury no more than what it had been told in other instructions – the People needed to prove defendant intentionally discharged the firearm beyond a reasonable doubt.

18

1    104 (quoting Strickland, 466 U.S. at 687).

2            Prejudice is found where "there is a reasonable probability that, but for counsel's

3    unprofessional errors, the result of the proceeding would have been different." Strickland, 466

4    U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

5    outcome." Id.  "The likelihood of a different result must be substantial, not just conceivable."

6    Richter, 131 S. Ct. at 792.

7            "The standards created by Strickland and § 2254(d) are both "highly deferential," and

8    when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations

9    omitted).  Thus, in federal habeas proceedings involving "claims of ineffective assistance of

10   counsel, . . . AEDPA review must be """doubly deferential""" in order to afford "both the state

11   court and the defense attorney the benefit of the doubt." Woods v. Daniel, ___U.S.___, ___, 135

12   S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. ___, ___, 134 S. Ct. 10, 13 (2013)).

13   As the Ninth Circuit has recently acknowledged, "[t]he question is whether there is any

14   reasonable argument that counsel satisfied Strickland's deferential standard." Bemore v.

15   Chappell, 788 F.3d 1151, 1162 (9th Cir. 2015) (quoting Richter, 562 U.S. at 105). See also

16   Griffin v. Harrington, 727 F.3d 940, 945 (9th Cir. 2013) ("The pivotal question is whether the

17   state court's application of the Strickland standard was unreasonable.  This is different from

18   asking whether defense counsel's performance fell below Strickland's standard.") (quoting

19   Richter, 562 U.S. at 101).

20                            **3. Analysis**

21           This court agrees with the California Court of Appeal that petitioner has failed to show

22   prejudice with respect to his claim of ineffective assistance of counsel.  Under the circumstances

23   of this case, there is no reasonable probability that the result of the proceedings would have been

24   different had petitioner's trial counsel requested a jury instruction based on the defense argument

25   that petitioner fired the shotgun at Martinez accidentally.  As noted by the state court, the trial

26   evidence supporting this argument was weak.  On the other hand, as described above, there was

27   substantial circumstantial evidence that petitioner intentionally shot Martinez in the leg in order to

28   prevent him from leaving.  The jurors' true finding on the firearm allegation "necessarily means

1   that the jury found the firearm was not accidentally discharged."  <u>White</u>, 2013 WL 1277880, at

2   *6.  Under these circumstances, petitioner was not prejudiced by his trial counsel's failure to

3   request a pinpoint jury instruction.  Accordingly, petitioner is not entitled to federal habeas relief

4   on this claim.

5       **IV.     Conclusion**

6       For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

7   application for a writ of habeas corpus be denied.

8       These findings and recommendations are submitted to the United States District Judge

9   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

10  after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13  shall be served and filed within fourteen days after service of the objections.  Failure to file

14  objections within the specified time may waive the right to appeal the District Court's order.

15  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

16  1991).  In his objections petitioner may address whether a certificate of appealability should issue

17  in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing

18  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

19  enters a final order adverse to the applicant).

20  DATED: February 8, 2016

21

22  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

20